JUSTICE SHEEHY,
dissenting:
In my opinion, this case involves an entrapment and therefore the convictions ought not to stand.
*198 On October 21, 1987, a captain of the Missoula County Sheriff’s Department directed two of his officers to visit Kim’s business premises and to investigate any possible illegal activities being conducted thereon. The officers went to the business in the guise of truck drivers, and were then given a tour by the defendant of her business premises. The men left the business, saying.they would return at a later date. They reported to the Captain that they observed nothing while on the premises, to indicate any illegal or immoral activity being conducted by the defendant or her employees.
While they were at the premises on October 21, 1987, they discussed with Kim the services available at her business. She explained to them there were three types of services, for $40, $60 and $100, based on the length and thoroughness of the massage and sauna. Kim explained that the $100 massage and sauna included “everything.” What “everything” means is apparently in the ear of the beholder. To Kim it meant everything related to massage and sauna. To the officers, “everything” meant some sort of sexual favors, although no discussion of sexual favors occurred at that time.
On October 22, 1987, the Captain initiated a thorough investigation of Kim’s background. The Captain spoke to a Missoulian reporter who reported that he and a newspaper photographer had gone undercover to Kim’s business in search of a possible story, and had both purchased and received massages. Neither of them had been offered sex by the defendant in exchange for compensation nor had either observed any immoral or illegal activity.
On October 22, 1987, the Captain telephoned officers in Seattle, Washington. Here it was reported to the Captain that there was no record of the defendant having ever been suspected of the charges of any offense during the years she resided and worked in the Seattle area.
The Captain checked the licensing authorities in the state to determine whether she had a proper business license. He found nothing in discord. He also requested of the Federal Immigration and Naturalization Service a thorough search of the records and status of all Koreans in the state of Montana with special emphasis on the defendant’s records and status. That report came back negative. He inquired of the owners of the premises that she was leasing. They advised that they had investigated her reputation and found nothing against her. The Captain investigated her motor vehicle records and found nothing in connection of her operation of an automobile.
On November 10, 1987, the Captain required his two undercover *199 officers again to visit Kim’s premises. They were instructed to pay for a $40 massage and sauna. The massages were administered only after each officer signed an acknowledgment that no sex would be offered or demanded. After the massages, the officers returned to the front of the business establishment and talked to Kim. There they told her that they wanted to have a bachelor party for seven or eight friends at her place of business. She agreed to reserve the premises for their bachelor party. Her understanding was that the purpose was to tease the prospective groom as a part of the bachelor party.
Thus the idea for the bachelor party originated in the minds of the investigating officers. The proposal was not one that would be a part of Kim’s regular business. Following the second account, the officers again reported to their Captain that they had observed no illegal or immoral activity being conducted on Kim’s premises.
On November 19, 1987, six Missoula County Deputy Sheriffs and one Deputy County Attorney, arrived at the premises for the prearranged bachelor party. They had consumed alcohol prior to entering “to give the appearance of being on a party.” They all engaged in teasing the groom about his upcoming marriage. The only activity that hints of sexuality is that one of the woman unbuttoned the groom’s shirt and attempted to remove his belt. While it was the officers who were saying to the prospective groom that they were going to have him “laid” before his marriage, it was then that the officers took Kim aside, and negotiated a proposal for sexual favors. She was placed under arrest. No money changed hands. No sexual activity of any kind ensued.
Under State v. Kamrud (1980), 188 Mont. 100, 611 P.2d 188, this was entrapment pure and simple.
1. The criminal design to solicit (this is a solicitation case) sexual activity did not originate with Kim but with the undercover officers.
2. The officers did more than merely afford Kim with the opportunity to commit the offense, they first committed the offense themselves.
3. They set up the situation by first ingratiating themselves with her even though they found no evidence of any criminal activity in connection with her business.
4. The investigation of her background and the undercover investigations gave no evidence that she was predisposed to commit any offense or that the idea originated with her.
There is no evidence that when on the second visit they proposed a *200 bachelor party that the bachelor party would include prostitution. If that had occurred, they would have so reported to their supervising officer.
The whole mess is a dirty business, but it originated in the Sheriff’s Department.
JUSTICE HUNT and JUSTICE McDONOUGH concur with the foregoing dissent.